Melvin **PORTER,** Plaintiff,

v.

**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, Defendant.**

**No. CIV.A. 00–1954(JR).**

United States District Court, District of Columbia.

Nov. 25, 2003.

---

1. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Samuel Swain Heywood, Steven M. Warshawsky, Eric C. Bosset, Covington & Burlington, Susan E. Huhta, Washington, DC, for Plaintiff.

Paul A. Mussenden, U.S. Attorneys Office for the District of Columbia, Washington, DC, for Defendant.

### MEMORANDUM ORDER

ROBERTSON, District Judge.

After a jury awarded him compensatory damages for retaliation in his employment discrimination action against USAID, Mel-

vin Porter filed a petition for equitable relief. He included a request for attorneys' fees in that petition and asked that I "gross up" the fee award to cover any tax liability a fee award might entail. I declined to rule on the attorneys' fee request while considering Porter's prayer for retroactive promotion, back pay, and injunctive relief, and I declined to decide the tax "gross up" question, finding the issue not then ripe for decision. With respect to the tax question, I said (hope once again prevailing over experience),

> Given the recent publicity on this issue... and the injustice of the result of the [IRS] position, it is hard to believe that Congress will not correct the problem before long. If it does not, I will consider whether there is some way of delinking the payment of attorneys fees from the plaintiff himself, and, if there is none, I will give further consideration to a "grossed up" award.

Mem., Sept. 9, 2002.

I have now granted plaintiff's attorneys' fee petition (by memorandum order filed today). Congress has not acted. Porter has renewed his request for an order requiring USAID to indemnify him against any tax consequences of the attorneys' fee award, or, in the alternative, "grossing up" the attorneys' fee award or "disconnecting" the fee from the plaintiff himself. The petition also asks that I retain jurisdiction so that I can address the indemnification question if, and when, the need arises.

### Background

Porter sued the United States Agency for International Development ("USAID") under Title VII of the Civil Rights act of 1964, alleging that USAID had discriminated and retaliated against him when it failed to select him for three separate positions at the GS–15 level. He initiated this litigation *pro se*. I urged him to obtain counsel and granted him an extension of time to do so. Through the Washington Lawyer's Committee for Civil Rights and Urban Affairs ("WLC"), plaintiff obtained assistance from Covington & Burling ("Covington") in February 2001. Covington and WLC then responded to USAID's first partial dispositive motion, which I granted in part and denied in part. Covington and WLC subsequently opposed a motion for summary judgment, which motion I denied, and the case proceeded to trial.

After a four-day trial, the jury found that retaliation had been a "motivating factor" in USAID's decision not to select Porter for two positions and awarded Porter compensatory damages of $15,000 on each retaliation claim. After the jury verdict, plaintiff moved for equitable relief, including promotion to a higher pay grade, a retroactive promotion, and back pay and benefits, which I denied, and an injunction against future retaliation, which I granted.

The award of attorneys' fees and litigation expenses to Porter will be for more than $200,000.

### Analysis

 The tax problem that gives rise to this motion is a vexing one for Title VII plaintiffs. There is very little case law that deals with it, and no controlling precedent in this Circuit. The origin of the problem appears to lie in the "assignment of income doctrine," which precludes individuals from avoiding tax consequences by assigning their income to others. *See Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930) (refusing to permit taxpayer to evade taxes through "anticipatory arrangements and contracts however skillfully devised to prevent the [income] ...from vesting even for a second in the [taxpayer] who earned it.").

Applying this doctrine, the IRS maintains that a successful plaintiff in a civil action who has agreed to pay a portion of a damages award to her lawyer as a contingent fee may not evade the tax on the *full* award simply because a portion of that award has been "assigned" (via the contingency agreement) to the lawyer.[1]

The portion of an award that goes to pay attorney's fees may be partially deductible,[2] but the deduction will not be available if the Alternative Minimum Tax ("AMT") is triggered.[3] The unhappy result is (or theoretically can be) that the tax consequences of an award of compensatory damages can seriously diminish or even exceed the award.[4]

Civil rights plaintiffs who settle their claims but are obligated to pay their attorneys fees under contingency agreements are treated just like other civil litigants under the assignment of income doctrine, notwithstanding that such a result is in direct conflict with the underlying pur-

1. See *Kenseth v. Comm'r,* 114 T.C. 399, 2000 WL 669977, (2000). There is a split among those circuits that have addressed the IRS's position on contingent fees. *Compare Kenseth v. Comm'r,* 259 F.3d 881 (7th Cir.2001); *Coady v. Comm'r,* 213 F.3d 1187, 1191 (9th Cir. 2000); *Baylin v. United States,* 43 F.3d 1451, 1454–55 (Fed.Cir.1995); *O'Brien v. Comm'r,* 319 F.2d 532 (3d Cir.1963), accepting the IRS position that contingent fees are taxable as gross income, *with Banks v. Comm'r,* 345 F.3d 373, 386 (6th Cir.2003); *Davis v. Comm'r,* 210 F.3d 1346, 1347 (11th Cir. 2000)(per curiam); *Srivastava v. Comm'r,* 220 F.3d 353 (5th Cir.2000), rejecting the IRS position and allowing contingent fees to be excluded from gross income.

In many cases, the split appears to turn on whether state law (e.g., attorney lien statutes) effectively transfers a proprietary interest in the contingent fee from the plaintiff to the attorney. *Compare Coady,* 213 F.3d at 1190 (contingent fees taxable as gross income to plaintiff, in part because "under Alaska law, attorneys do not have a superior lien or ownership interest in the cause of action"); *Baylin,* 43 F.3d at 1455 (contingent fees taxable as gross income to plaintiff; Maryland law did not create an ownership interest in the attorney), *with Davis,* 210 F.3d at 1347 (excluding contingency fees from gross income "in light of the attorneys' lien statute in Alabama"); *Banaitis v. Comm'r,* 340 F.3d 1074, 1082 (9th Cir.2003) (excluding contingency fees from gross income because Oregon "affords attorneys generous property interests in judgments and settlements"). However, some Circuits are less willing to allow attorney's lien statutes to control the disposition of federal tax law. *See, e.g., Banks v. Comm'r,* 345 F.3d at 386.

2. The IRS takes the position that attorneys' fees are not to be subtracted from a taxpayer's gross income, but instead should be treated as "miscellaneous itemized deduction." *See Kenseth,* 114 T.C. 399 at *10, . However, this deduction is only permitted to the extent that the total exceeds two percent of the taxpayer's adjusted gross income. I.R.C. § 67(a). In addition, a provision in the tax code imposes a ceiling on miscellaneous itemized deductions. I.R.C. § 68.

3. Taxpayers must compute and pay the AMT if it yields a higher tax than the taxpayer would owe under the regular income tax structure. I.R.C. § 55(a). However, the AMT does not permit miscellaneous itemized deductions at all. I.R.C. § 56(b)(1)(A)(i).

4. *See generally* Darren J. Campbell, *Comment: Wiping the Slate Clean: An Examination on How a Court's Characterization of Contingent Attorney's Fees Implicates the Alternative Minimum Tax and Affects the Taxpayers,* 35 U.C. Davis L.Rev. 171 (2001) (comparing approach taken by circuits that include contingent attorney's fees in gross income to the approach taken by those circuits that exclude contingent fees from gross income and calling for an amendment to the Alternative Minimum Tax); B. Douglas Smith, Jr., *Note: Ethel Cotnam's Ghost: The Conflicting Tax Treatment of Contingent Attorneys' Fees: Strivastava v. Commissioner,* 54 Tax Law. 437 (2001) (advocating amendment to the AMT that would exclude contingent attorneys' from the AMT base, there by "reducing the burden on those who must, under the American rule requiring parties to pay their own legal expenses, pay extraordinary amounts to gain monetary redress through the courts.").

pose(s) of the fee shifting provisions applicable to civil rights litigation. *See e.g., Sinyard v. Comm'r,* 268 F.3d 756, 759 (9th Cir.2001) (portion of settlement in ADEA action designated as attorney's fees is income to plaintiff despite that the "anomalous result [was] no doubt unintended"); *Campbell v. Comm'r* 274 F.3d 1312, 1314–15 (10th Cir.2001)(contingency fee paid to lawyer in Title VII action was income; "perceived inequities of the AMT are simply not at issue here.").

No court has squarely held that a Title VII fee *award* (as distinct from a fee payable from a lump sum settlement) is as taxable to the successful plaintiff as the contingent fee payable from an ordinary award of damages.[5] Nevertheless, the possibility that an attorney's fee award could place a successful Title VII plaintiff like Porter in a worse position than if he had never filed suit is a matter of serious concern.[6]

If Porter's liability to pay tax on the attorneys' fee award in this case were established as a matter of law, and if that tax could be calculated with precision, I believe I could enter a gross-up order in the exercise of the "full equitable powers" I have to effectuate the purposes of Title VII. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Such an order would be necessary to "make [Porter] whole for injuries suffered on account of unlawful employment discrimination," because the imposition of a tax that would reduce his compensatory damage award would leave him less than whole. *Id.* at 418, 95 S.Ct. 2362; *see also, Int'l Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 372, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Peyton v. DiMario,* 287 F.3d 1121, 1125–26 (D.C.Cir.2002). The D.C. Circuit's decision in *Dashnaw v. Pena,* 12 F.3d 1112, 1116 (D.C.Cir.1994) is not to the contrary. That decision declined a gross-up for a Title VII plaintiff who had received a lump sum backpay award. A backpay award, however, unlike an award of attorneys' fees, is actually income to the plaintiff. It might be argued that a gross-up award unfairly penalizes the defendant for something that is not the defendant's fault, but so (for example) does a fee award that makes adjustments to the lodestar to compensate for difficulty and risk, *Copeland v. Marshall,* 641 F.2d 880, 892–93 (D.C.Cir.1980).

No gross-up will be awarded here, however, because the situation that I believe would permit it—an established tax liability, capable of precise calculation—is not present. Plaintiff's counsel suggests that the next best thing would be an order indemnifying Porter, in case a tax is assessed against him, or, at least, an order retaining jurisdiction so that the issue can

---

5. *Spina v. Forest Preserve Dist. of Cook County,* 207 F.Supp.2d 764 (N.D.Ill.2002) is the only case involving a court-awarded fee under a fee-shifting provision that even comes close to ruling on the tax issue. In *Spina,* a jury awarded plaintiff $3 million in compensatory damages under Title VII. *Id.* at 768–69. Defendant then challenged the jury award. *Id.* Although attorney's fees had not yet been awarded, plaintiff argued that a reduced damages award would leave her with little or nothing if and when her anticipated attorney's fees were taxed by the IRS. In making this appeal to the equitable powers of the court to sustain her jury award, plaintiff simply assumed that the tax would be assessed under prevailing Seventh Circuit law. The court rejected Spina's appeal to equity, but stopped short of holding on the tax issue itself. *Id.* at 777.

6. *See* Laura Sager and Stephen Cohen, *How the Income Tax Undermines Civil Rights Law,* 73 S. Cal. L.Rev. 1075, 1077–78 (2000) (noting that, under the IRS's approach to the taxation of contingent fees, a successful civil rights plaintiff may end up with an after-tax loss).

be visited later if need be. Neither option would serve the interests of justice. Both would disserve the law's interest in finality, and both would reduce or completely remove the plaintiff's incentive to limit his tax liability (and thus mitigate his damages) with sound tax planning.

■ After careful consideration of plaintiff's petition, I have concluded that the best course is to do what I can to ensure that the attorneys' fee award never becomes a tax problem for Porter, by (i) making the fee award directly to counsel and *not* to Porter and (ii) explaining the nature of the award clearly, so that Porter or his tax adviser can refer to the explanation when preparing income tax returns, and so that the IRS can consider the explanation before attempting to impose a tax on Porter for the attorney's fee award.

The plaintiff's attorney in a Title VII case performs a public interest role that includes but is greater than that of officer of the court. Congress decided that attorneys for successful Title VII plaintiffs would be compensated by unsuccessful defendants, notwithstanding the "American rule" on attorneys' fees, because it recognized that incentives would be needed to bring lawyers into a controversial field, where recoveries might not otherwise warrant substantial fees, in order to vindicate newly enacted civil rights. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401–02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The purpose of fee shifting provisions such as 42 U.S.C. § 2000e–5(k) is to

"attract competent counsel" without "produc[ing] windfalls to attorneys." S. Rep. 94–1011 at 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. This record does not reflect the exact nature of the attorney-client relationship between Porter and Covington, but a reasonable inference from what we do know is that Porter (and the WLC) were able to attract one of Washington's finest law firms to pick up where Porter's *pro se* efforts left off in substantial part because of the fee-shifting provisions of Title VII.

An award of attorneys' fees in a Title VII case is not a percentage, or a subset, or in any way a part of an award of compensatory damages or of an award of backpay, front pay, or pre-judgment interest given as equitable relief. It is a separate award, separately provided by statute, and made by the court in a separate proceeding. An award of attorneys' fee under Title VII is functionally indistinguishable from an award made under the Civil Rights Attorneys' Fees Awards Act 42 U.S.C. § 1988, as to which the Supreme Court has stated:

> "Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial."

*White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).[7]

---

7. The fee is to be made to the "prevailing party ... *as costs*." § 2000e–5(k) (emphasis added) "Costs" is a term of art, and the subject of established rules of procedure. *See* Fed.R.Civ.P. 54(d); LCvR 54.1, 54.2. Note especially that Fed.R.Civ.P. 54(d)(2)(A) provides that "claims for attorneys' fees and related nontaxable expenses shall be made by motion *unless the substantive law governing the action provides for the recovery of such fees*

as an element of damages to be proved at trial." Title VII contains no such provision. Although neither party has briefed this issue, it seems to me that not even the IRS would take the position that moneys received upon a bill of costs for "related nontaxable expenses," such as expert witness fees as authorized under 42 U.S.C. § 1988(c), could be regarded as income to the prevailing party. The payment of costs is, indeed, reimburse-

The ownership issue that appears to have split the circuits on the taxability of contingent fees, *see supra* note 1, is not germane to a statutory Title VII attorneys' fee, and neither is the assignment of income doctrine. It is true, to be sure, that an attorney needs the consent of his client to collect a Title VII fee. *See Soliman v. Ebasco Services, Inc.,* 822 F.2d 320, 323 (2d Cir.1987), *cert. denied* 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); *c.f. Evans v. Jeff D.,* 475 U.S. 717, 731–32, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (Civil Rights Attorneys' Fee Act did not "bestow[ ] fee awards upon attorneys.") Those cases make sense of § 2000e–5(k)'s provision of attorney's fee awards to the "prevailing party" and help answer the question of who may authorize a motion for fees. They do not mean or require, however, that the plaintiff must count the fee as income, once the motion is granted.[8]

While the "prevailing party" language of 42 U.S.C. § 2000e–5(k) certainly means that the *form* of an attorneys' fee award is that of an award made to the prevailing party, in *substance* the award is to counsel. In practice, fee applications are invariably prepared and filed by attorneys, supported by attorneys' billing materials and affidavits, calculated according to market data about prevailing attorneys' fees, and evaluated by judges using criteria that have little to do with the prevailing parties in the cases before them or with the relationships between the prevailing parties and their attorneys.[9]

In this case, as a matter both of form and of substance, the attorneys' fee award that will be issued upon the recalculation of certain amounts by plaintiff's counsel (see the accompanying memorandum) will be made directly to Covington & Burling and to the Washington Lawyers' Committee for Civil Rights and Urban Affairs.

As a formal matter, the petition for indemnification must be, and it is hereby, **denied.**

ment—for monies already spent or deemed to have been spent.

**8.** Note that, while *Soliman* and *Jeff D* both stand generally for the proposition that an attorney cannot seek an attorney's fee without the support of his client, it also true that a client cannot seek an attorney's fee without an attorney. *See White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

**9.** *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that the touchstone of a fee award is the hours reasonably expended at a reasonable hourly rate, while acknowledging the continued validity of the various factors set forth in *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 717 (5th Cir.1974)).