151 P.3d 976 (2007)
CHUONG VAN PHAM, an individual, and Heliodoro Lara, an individual, Respondents,
v.
CITY OF SEATTLE, SEATTLE CITY LIGHT, Petitioner.
No. 76595-2.
Supreme Court of Washington, En Banc.
Argued November 9, 2005.
Decided February 1, 2007.
*977 Frederick E. Wollett, Kathleen O'Hanlon, Seattle City Attorneys Office, Seattle, for Petitioner.
John Patrick Sheridan, Sheridan & Baker PS, Gregory Alan Wolk, Seattle, for Respondents.
Deborah Dubois Brookings, Deborah D. Brookings Attorney at Law, Seattle, for Amicus Curiae Wash. Defense Trial Lawyers.
Michael Craig Subit, Frank Freed Subit & Thomas LLP, Jeffery Lowell Needle, Seattle, for Amicus Curiae Wash. Employment Lawyers Ass'n.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae Wash. State Trial Lawyers Ass'n Foundation.
BRIDGE, J.
¶ 1 Chuong Van Pham and Heliodoro Lara sued the City of Seattle, Seattle City Light *978 (Seattle City Light) for employment discrimination on the basis of race and national origin. A jury awarded them $550,000 collectively. Pham and Lara sought and were awarded attorney fees, though the trial court awarded them $50,000 less than they had requested and declined to apply a fee multiplier. The trial court also awarded Pham and Lara a supplemental award to compensate for the additional income tax consequences of receiving front and back pay and attorney fees in a single lump sum. However, the trial court declined to award an additional tax offset for the tax consequences attributable to their noneconomic damages. The Court of Appeals concluded that the trial court erred by denying a tax offset for noneconomic damages, by declining to award attorney fees for some of the hours claimed by the plaintiffs' lawyers, and by declining to apply a contingency multiplier. Chuong Van Pham v. Seattle City Light, 124 Wash.App. 716, 724, 726, 731, 103 P.3d 827 (2004). The City of Seattle petitioned for review, which we granted.
¶ 2 We reverse the Court of Appeals in part and hold instead that the trial court properly declined to award an additional tax offset for Pham and Lara's noneconomic damages. We also conclude that the trial court did not abuse its discretion when it calculated attorney fees. Finally, we agree with the Court of Appeals that the trial court erred in considering the weakness of the plaintiffs' case when deciding whether to apply a fee multiplier. However, we remand to the trial court to determine whether, absent this improper consideration, a multiplier is justified here. We affirm in part and reverse in part and remand to the trial court for proper consideration of whether a fee multiplier is warranted in this case.

I

Statement of Facts and Procedural History
¶ 3 In 1997, Pham and Lara sued Seattle City Light alleging, among other things, discrimination based on race and ethnic origin in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. A jury found in their favor and awarded them $550,000. Specifically, the jury awarded Pham $263,075 in front pay, $86,072 in back pay, and $80,000 in noneconomic damages. The jury awarded Lara $80,140 in front pay, $10,000 in back pay, and $40,000 in noneconomic damages.
¶ 4 Both plaintiffs had been represented by Sheridan & Associates, P.S., on a contingent fee basis. The plaintiffs filed a petition for attorney fees and costs, requesting $347,588.27 in attorney fees, $52,064.79 in costs, and a multiplier of 2.0. In December 2002, the court awarded $297,532.77 in attorney fees, (approximately $50,000 less than the requested amount) and $42,092.02 in costs. The trial court declined to apply any multiplier.
¶ 5 Then in March 2003, pursuant to Blaney v. International Association of Machinists & Aerospace Workers, 114 Wash.App. 80, 55 P.3d 1208 (2002), the trial court granted a motion awarding Pham an additional $99,831 and Lara an additional $66,855 to cover additional tax consequences resulting from the fact that they were awarded front pay, back pay, and attorney fees in one lump sum. Pham and Lara had requested additional tax offsets totaling $171,284 and $94,703, which would have also compensated Pham and Lara for the tax consequences of their noneconomic damages, but the trial court elected not to award any tax offset for noneconomic damages.
¶ 6 Pham and Lara appealed. Division One of the Court of Appeals affirmed in part and reversed in part. Pham, 124 Wash.App. 716, 103 P.3d 827. Among other things, the Court of Appeals held that Pham and Lara were entitled to compensation for their increased tax liability attributable to the noneconomic damage portion of the judgment. Id. at 731, 103 P.3d 827. The Court of Appeals also held that the trial court abused its discretion when it awarded Pham and Lara approximately $50,000 less than they requested in attorney fees and when it denied the fee multiplier. Id. at 726, 103 P.3d 827. The Court of Appeals ordered the trial court to determine the proper fee multiplier on remand. Id. at 724, 103 P.3d 827. Seattle City Light filed a petition for review, which this court granted.

*979 II

Analysis

Income Tax Consequences of Noneconomic Damage Awards
¶ 7 In this case, plaintiffs Pham and Lara were collectively awarded $120,000 in noneconomic damages for emotional distress, in addition to front and back pay. They sought supplemental judgment from the trial court that would have required, in part, that Seattle City Light compensate them for federal income taxes they would have to pay on the noneconomic damages. The trial court awarded Pham and Lara an offset for the tax consequences of receiving their front and back pay in one lump sum. Pham, 124 Wash.App. at 729, 103 P.3d 827. However, the trial court declined to grant an offset that would have required the defendant to pay an amount equivalent to federal income taxes on the noneconomic damages. Id. The Court of Appeals reversed in part, concluding that the supplemental judgment should have included the offset for the noneconomic damages as well as front and back pay. Id. at 731, 103 P.3d 827.
¶ 8 Commentators and courts to date have recognized two ways in which an employment discrimination plaintiff may suffer adverse tax consequences. Gregg D. Polsky & Stephen F. Befort, Employment Discrimination Remedies and Tax Gross Ups, 90 Iowa L.Rev. 67, 69 (2004). First, where the plaintiff is awarded back pay and/or front pay and the plaintiff's recovery is received in a lump sum, the plaintiff is subject to marginal tax rates higher than if the plaintiff had earned the same amount of money in due course. Id. Second, prior to 2004 amendments to the tax code, a lump sum employment discrimination recovery that included attorney fees could result in application of the alternative minimum tax (AMT).[1] If the AMT were implicated, it could cause the recovery to be taxed at rates in excess of 35 percent. Id. at 70. This outcome is known as the "AMT trap," and in severe cases it can result in a plaintiff losing money by winning the lawsuit. Comm'r of Internal Revenue v. Banks, 543 U.S. 426, 438, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005); see also Porter v. United States Agency for Int'l Dev., 293 F.Supp.2d 152, 155 (D.D.C.2003) (describing the potential tax consequences of an attorney fee award for Title VII plaintiffs). In recent years, some federal and state courts, including our own, have become more receptive to requests for augmented awards in employment discrimination cases to ameliorate these adverse federal tax consequences. E.g., Blaney, 151 Wash.2d at 215-16, 87 P.3d 757; Sears v. Atchison, Topeka & Santa Fe Ry., 749 F.2d 1451, 1456-57 (10th Cir.1984); EEOC v. Joe's Stone Crab, Inc., 15 F.Supp.2d 1364, 1380 (S.D.Fla.1998); Ferrante v. Sciaretta, 365 N.J.Super. 601, 839 A.2d 993, 996 (2003).
¶ 9 In Blaney, we concluded that the WLAD allows an offset for "additional federal income tax consequences" incurred by an employment discrimination plaintiff. Blaney, 151 Wash.2d at 216, 87 P.3d 757 (emphasis added). Blaney was awarded front pay, back pay, and noneconomic damages for pain and suffering and emotional distress. Id. at 208, 87 P.3d 757. She sought to recover the additional taxes she would have to pay above and beyond what she would have paid had she been properly hired. Id. at 209, 87 P.3d 757. Specifically, we explained that Blaney would
incur this greater liability because payment by lump sum places her in the highest tax bracket and triggers the "Alternative Minimum Tax (AMT), which disallows portions of her attorneys fees as a miscellaneous itemized deduction."
Id. at 209 n. 2, 87 P.3d 757 (quoting declaration of D. Edson Clark, a certified public *980 accountant, discussing the adverse tax consequences of a lump sum award).
¶ 10 While Pham and Lara assert that this court impliedly endorsed a tax offset for noneconomic damages in Blaney because we did not explicitly distinguish between economic and noneconomic damages in that case, they ignore the fact that we did not endorse a particular calculation. Blaney, 151 Wash.2d at 217, 87 P.3d 757 (affirming the result reached by Court of Appeals but applying a different analysis); Blaney, 114 Wash.App. at 100, 55 P.3d 1208 (emphasizing that on remand the burden of proof would be on Blaney to prove the adverse tax consequences in that case and the amount to be awarded would be determined by the trial judge). Even though we took note of the amount Blaney requested in her motion for supplemental judgment, we left the actual calculation to the trial judge. Any implication that we endorsed an award covering taxes of noneconomic damages is simply incorrect.
¶ 11 More importantly, the reasoning of the Blaney opinion does not support Pham and Lara's position. In determining whether payment for adverse tax consequences was a remedy contemplated by the WLAD, we looked to federal civil rights law and cases interpreting Title VII:
Because WLAD incorporates remedies authorized by the federal civil rights act and that statute has been interpreted to provide the equitable remedy of offsetting additional federal income tax consequences of damage awards, we hold that WLAD allows offsets for additional federal income tax consequences.
Blaney, 151 Wash.2d at 215-16, 87 P.3d 757 (emphasis added). The Blaney court relied on the WLAD's incorporation of federal law as its basis for allowing offsets. The federal cases cited in that opinion do not extend offsets to noneconomic damages. In Sears, the Tenth Circuit Court of Appeals allowed a tax offset because 17 years of back pay was awarded in one lump sum, but the court noted the "special circumstances" resulting from protracted litigation and suggested that an offset would not be appropriate in every case. 749 F.2d at 1456. In Joe's Stone Crab, also cited in Blaney, a federal district court concluded that it could "include a tax component in a lump sum back pay award to compensate prevailing Title VII plaintiffs," but declined to do so in that case because the Equal Employment Opportunity Commission failed to provide sufficient evidence to support such an award. 15 F.Supp.2d at 1380 (emphasis added). Thus, the federal law relied upon by the Blaney court to support its tax offset does not extend to compensation for taxes on noneconomic damages. Nor do Pham and Lara cite to any federal case (Title VII or otherwise) that extends offsets to noneconomic damages. Blaney simply provides no basis for the extension of offsets to noneconomic damages, and its analysis in fact establishes the opposite, that the offsets discussed in that case applied only to the extent that they apply under federal law, i.e., to front and back pay awards. This conclusion is supported by the Blaney court's consistent reference to "additional" federal tax consequences. E.g., Blaney, 151 Wash.2d at 212, 214, 216, 87 P.3d 757.
¶ 12 But even if we assume that Blaney does not address the question before us and ask ourselves simply whether we should now extend offsets to noneconomic damages, there are compelling reasons not to do so. First, noneconomic damages are inherently different from front and back pay. Front and back pay are damages that replace compensation that the employee would have earned in due course absent the discrimination. Polsky & Befort, supra, at 71. They are intended to place the plaintiff in the same economic position he or she would have enjoyed absent the discrimination. See id. at 117-18. Moreover, plaintiffs asking for an offset to cover adverse tax consequences resulting from a single lump sum payment of front and back pay do not assume that the defense will pay their entire tax burden for that recovery; they ask only to be compensated for the additional tax consequences resulting from the lump sum character of the payment. Id. at 117.
¶ 13 While noneconomic damages for emotional distress are also intended to compensate the plaintiff, they obviously do not replace a tangible economic loss. Congress *981 explicitly decided that noneconomic damages were to be taxable when they are attributable to nonphysical injury and Congress placed this tax burden on the plaintiff. I.R.C. § 104(a)(2) (2006) (excluding damages, other than punitive damages, from gross income only if such damages arise from personal physical injury or physical illness). Under Pham and Lara's reasoning, a plaintiff would retain no tax liability for noneconomic damages. Shifting the tax burden on these awards entirely to the defendant simply goes too far.
¶ 14 Moreover, Pham and Lara ignore the fact that they can point to no other court that has extended federal tax offsets to noneconomic damages. Until now, courts and commentators have consistently contemplated adverse tax consequences in an employment discrimination case to be the difference between the taxes to be paid on the single lump sum award for front and back pay and the amount of taxes the employee would have paid had he or she earned the wages in due course. Polsky & Befort, supra, at 72; Sears, 749 F.2d at 1456; O'Neill, 108 F.Supp.2d at 446 (explicitly limiting an award covering increased tax liability to front and back pay only); Joe's Stone Crab, 15 F.Supp.2d at 1380; Ferrante, 839 A.2d at 994, 997. The plaintiffs in this case have not pointed to a single employment discrimination case in which a court has adopted their reasoning.
¶ 15 The plaintiffs instead rely on the rule that the WLAD must be liberally construed. RCW 49.60.020. However, the WLAD's liberal construction clause is not without limitation. See, e.g., Dailey v. N. Coast Life Ins. Co., 129 Wash.2d 572, 575, 919 P.2d 589 (1996) (concluding that the WLAD's reference to any other remedy authorized by the federal civil rights act did not extend to punitive damages); Allison v. Hous. Auth., 118 Wash.2d 79, 85-86, 95, 821 P.2d 34 (1991) (acknowledging the WLAD's requirement of liberal construction but adopting an intermediate "`substantial factor'" standard of proof, rather than the more plaintiff-friendly "`to any degree'" standard). The legislature would not have imposed such a broad tax-shifting mechanism absent more explicit direction. Moreover, if we were to adopt Pham and Lara's arguments, the reasoning could be applied to other types of awards. This would amount to a sweeping change in tort law in this state, one which we decline to impose absent legislative authorization. In sum, we reverse the Court of Appeals and conclude that the trial court did not err when it awarded tax offsets only for the front and back pay and attorney fee portions of Pham and Lara's awards.

Attorney Fee Calculation
¶ 16 The WLAD entitles prevailing plaintiffs to "reasonable attorneys' fees." RCW 49.60.030(2). To calculate a lodestar amount, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 597, 675 P.2d 193 (1983). The hours reasonably expended must be spent on claims having a "common core of facts and related legal theories." Martinez v. City of Tacoma, 81 Wash.App. 228, 242-43, 914 P.2d 86 (1996). The court should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time. Bowers, 100 Wash.2d at 597, 600, 675 P.2d 193. In order to reverse an attorney fee award, an appellate court must find the trial court manifestly abused its discretion. Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987). That is, the trial court must have exercised its discretion on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 17 In this case, the trial judge awarded Pham and Lara attorney fees in an amount approximately $50,000 less than they had requested. While the trial court found the attorneys' rates to be reasonable, he excluded from the lodestar calculation hours that he found were unnecessarily expended or not reasonably related to the plaintiffs' favorable resolution. Specifically, the trial judge declined to award fees for hours spent on an unsuccessful claim for injunctive relief, the propriety of which was in doubt after Initiative 200 (I-200) became law. The trial court also declined to award fees for hours *982 spent working on the plaintiffs' unsuccessful cross-motion for summary judgment in the federal district court, the plaintiffs' motion on the merits at the Court of Appeals, their second amended complaint, which was never filed, and development of media contacts. The trial court excluded hours spent working on plaintiffs' appeals, their unsuccessful request for a fee multiplier, income tax offset issues, settlement discussions, and determination of the impact of a plaintiff's death on the judgment. After having declined to award fees for these hours, the trial court determined that the plaintiffs were entitled to $297,532.77 in attorney fees and $42,092.02 in costs.
¶ 18 The Court of Appeals concluded that the trial court erred when it declined to award fees for some of these activities, faulting the trial court for focusing on the short term failure of certain components of the litigation, rather than on the long term success of the litigation as a whole. Pham, 124 Wash.App. at 726, 103 P.3d 827. The court regarded the rejected hours as part of the common core of facts and related legal theories upon which the ultimately successful claim was based. Id. The court concluded that "neither the findings of the court nor the record below indicate that the work of plaintiffs' attorneys was characterized to any substantial degree by duplication, wastefulness, churning, or other sins of mismanagement." Id. at 725-26, 103 P.3d 827.
¶ 19 However, in its findings of fact, the trial court did reason that the hours at issue were unproductive or that they were not sufficiently related to the successful claim, both relevant considerations under the Bowers test. The trial court questioned the propriety of seeking injunctive relief because this case was factually unique and the intervening passage of I-200 called the legality of injunctive relief into doubt. See Clerk's Papers (CP) at 650; see also Hensley v. Eckerhart, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (noting that where a plaintiff achieved only limited success, "the district court should award only that amount of fees that is reasonable in relation to the results obtained"). The trial court concluded that the motion for summary judgment in federal court, motion on the merits at the Court of Appeals, motion to file a second amended complaint, which was never filed, and time spent on media contacts were not reasonably related to the favorable claims. Finally, the trial court concluded that time spent on additional matters was time unnecessarily expended. Because the trial court's reasoning relies on the notion that these hours were unnecessarily expended, unproductive, or not sufficiently related to the successful claim, considerations allowed under the Bowers test, Bowers, 100 Wash.2d at 597, 675 P.2d 193, the trial court considered proper factors and did not commit an error of law. Moreover, the trial court took care to reduce the fees only in proportion to the amount of time devoted to these specific tasks. See Martinez, 81 Wash.App. at 243, 914 P.2d 86.
¶ 20 In this case, the trial judge took care to enter 35 findings of fact justifying his reasonable fee calculation. This case involved a complex pretrial procedural history, involving both federal and state courts, an appeal to the Ninth Circuit, and an interlocutory appeal to the Court of Appeals. The case eventually culminated in a jury trial. In all cases, but especially in ones as complex as this one, it is the trial judge who has watched the case unfold and who is in the best position to determine which hours should be included in the lodestar calculation. See Hensley, 461 U.S. at 437, 103 S.Ct. 1933. That is why the law requires us to defer to the trial court's judgment on these issues. The issue before us is not whether we would have awarded a different amount, but whether the trial court abused its discretion. Pham and Lara have not shown that the trial court abused its discretion in calculating attorney fees in this case.

Contingency Adjustment
¶ 21 After the lodestar has been calculated, the court may consider adjusting the award to reflect additional factors. Bowers, 100 Wash.2d at 598, 675 P.2d 193. The party requesting a deviation from the lodestar bears the burden of justifying it. Id. "Adjustments to the lodestar are considered under two broad categories: the contingent *983 nature of success, and the quality of work performed." Id. Pham and Lara seek an adjustment to the lodestar amount based only on the contingent nature of their case.
¶ 22 The contingency adjustment is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk. Id. As an initial matter, we note that Seattle City Light encourages us to reject contingency enhancements altogether. The United States Supreme Court in City of Burlington v. Dague, 505 U.S. 557, 559, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), addressed a contingency multiplier in the context of a federal statute that provided for attorney fees. The Dague Court reasoned that the lodestar calculation is presumptively reasonable and that a contingency multiplier would "likely duplicate in substantial part factors already subsumed in the lodestar." Id. at 562, 112 S.Ct. 2638. Specifically, the Court explained that the risk of loss in a particular case is the product of (1) the legal and factual merits of the claim and (2) the difficulty of establishing those merits. Id. The difficulty of establishing the merits of the case is thus already reflected in the lodestar amount because the more difficult a case is, the more hours an attorney will have to prepare and the more skilled an attorney will have to be to succeed. Id. A contingency enhancement would result in double payment. Id. at 563, 112 S.Ct. 2638. With regard to the relative merits of the claim, the Court reasoned that this is a factor that always exists to some degree. Id. Applying contingency or risk multipliers results in a "social cost of indiscriminately encouraging nonmeritorious claims to be brought as well [as meritorious ones]." Id.
¶ 23 While subsequent Washington cases have considered contingency enhancements, none has directly addressed whether the Dague reasoning should apply to prohibit contingency multipliers in Washington. See Faraj v. Chulisie, 125 Wash.App. 536, 550, 105 P.3d 36 (2004) (recognizing that multipliers can be appropriate in contingency cases but declining to apply one where the trial court did not); Carlson v. Lake Chelan Cmty. Hosp., 116 Wash.App. 718, 743, 75 P.3d 533 (2003) (upholding trial court's award of 1.5 multiplier). However, the WLAD places a premium on encouraging private enforcement and as discussed above, the possibility of a multiplier works to encourage civil rights attorneys to accept difficult cases. RCW 49.60.020; Martinez, 81 Wash.App. at 235, 914 P.2d 86. While we presume that the lodestar represents a reasonable fee, occasionally a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case. Therefore, we decline to disapprove of contingency multipliers altogether.
¶ 24 When determining whether a contingency multiplier is warranted in a particular case, we have explained that
In adjusting the lodestar to account for this risk factor, the trial court must assess the likelihood of success at the outset of the litigation. This is necessarily an imprecise calculation and must largely be a matter of the trial court's discretion. Nevertheless certain guiding principles should be followed [T]o the extent, if any, that the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees, no further adjustment duplicating that allowance should be made.
Bowers, 100 Wash.2d at 598-99, 675 P.2d 193 (emphasis added).
¶ 25 In this case, the trial court declined to apply a fee multiplier. In explaining his decision, the trial court acknowledged that this was a high risk case, but "much of that risk was a consequence of the plaintiffs' own difficulty in articulating the nature of the claims of discrimination against them and the marginal nature of [the] plaintiffs' evidence." CP at 653. The trial court found that "[a]lthough plaintiffs' counsel should be fairly compensated for his perseverance in pursuing a difficult case with a modicum of evidence of discrimination, this [c]ourt concludes that the lodestar amount, without a multiplier, grants just compensation." CP at 653 (emphasis added).
¶ 26 We agree with Pham and Lara that the trial court should not have used their inability to articulate their claims as justification *984 for denying the multiplier. A plaintiff's difficulty in articulating his or her claims is one of many possible sources of risk. But both the trial court and Seattle City Light have failed to explain why this source of risk should weigh against application of a contingency adjustment. Cf. Boeing Co., 108 Wash.2d at 65, 738 P.2d 665 (finding abuse of discretion where the trial court reduced attorney fees based on the novelty of the claim involved because novelty was not a relevant concern). Indeed, as the Court of Appeals explained, at the outset of a disparate treatment case, a plaintiff's inability to articulate claims and a lack of known evidence are not uncommon. Pham, 124 Wash.App. at 723, 103 P.3d 827. Neither the trial court nor Seattle City Light has offered an explanation as to why the source of risk should impact the determination of whether a contingency multiplier should be applied.
¶ 27 In considering the propriety of a contingency adjustment, we have held that the trial court abuses its discretion when it takes irrelevant factors into account. Boeing Co., 108 Wash.2d at 65, 738 P.2d 665; see also Perry v. Costco Wholesale, Inc., 123 Wash. App. 783, 809, 98 P.3d 1264 (2004). Here the trial court considered an improper factor when evaluating the propriety of a contingency adjustment in this case.
¶ 28 However, the trial court also concluded that "the lodestar amount, without a multiplier, grants just compensation." CP at 653. It is possible that the trial court would have denied the multiplier based on this conclusion alone. We therefore remand to the trial court to exercise its discretion as to the propriety of a multiplier without consideration of the improper factor. Perry, 123 Wash.App. at 809, 98 P.3d 1264.

Attorney Fees on Appeal
¶ 29 Pham and Lara requested attorney fees and costs on appeal. Pham, 124 Wash. App. at 732, 103 P.3d 827. Requests for attorney fees at the Court of Appeals will be considered continuing requests at the Supreme Court. RAP 18.1(b). However, because Pham and Lara do not substantially prevail on review at this court, we deny attorney fees on appeal.

III

Conclusion
¶ 30 We conclude that the trial court did not err in declining to award Pham and Lara an offset for the tax consequences of their noneconomic damages. We also conclude that the trial court did not abuse its discretion in calculating the lodestar amount. However, we recognize that when evaluating the propriety of a contingency multiplier, the trial court improperly considered the inability of the plaintiffs to clearly articulate their claims or provide substantial supporting evidence. We affirm in part, reverse in part, and remand to the trial court for reconsideration of whether a contingency multiplier is warranted in this case.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, BARBARA A. MADSEN, MARY E. FAIRHURST, and JAMES M. JOHNSON, JJ.
SANDERS, J. (dissenting).
¶ 31 The majority's treatment of the lodestar fee and contingency multiplier is devastating for civil rights plaintiffs. The legislature's goal when enacting the fee shifting statute was "to enable vigorous enforcement of modern civil rights litigation and to make it financially feasible for individuals to litigate civil rights violations." Hume v. Am. Disposal Co., 124 Wash.2d 656, 675, 880 P.2d 988 (1994). However the majority's holding soundly defeats this goal. When adequate compensation for attorney fees is not provided, victims of civil rights violations suffer. The majority's decision will ultimately preclude plaintiffs from bringing the very type of discrimination case we see before us today because a lawyer who fears she cannot collect her fee will simply not take a risky case.
I. The Lodestar Figure
¶ 32 Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, entitles prevailing plaintiffs to "reasonable attorneys' fees." RCW 49.60.030(2). To encourage private enforcement of WLAD, the reasonable *985 attorney fee remedy must be construed liberally. Martinez v. City of Tacoma, 81 Wash.App. 228, 235, 914 P.2d 86 (1996). To calculate the fee award, the trial court must apply the approach developed by the Third Circuit Court of Appeals in Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). Under this approach the court first determines a "lodestar" fee by multiplying a reasonable hourly rate by the number of hours reasonably expended. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 593-94, 675 P.2d 193 (1983) (citing Miles v. Sampson, 675 F.2d 5, 8 (1st Cir.1982)). However the court may "limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Id. at 597, 675 P.2d 193. The important contours of this limitation are at issue here.
¶ 33 Supposedly applying this approach, the trial court refused to compensate Chuong Van Pham and Heliodoro Lara approximately $50,000 of their requested lodestar attorney fees.[1] Specifically, the court disallowed (1) $10,000 for 40 hours spent on the injunctive relief claim;[2] (2) $14,375 for 57.5 hours spent on a cross-motion for summary judgment in United States District Court, motion on the merits, motion to file a second amended complaint (never filed), and media contacts;[3] (3) $4,139 for preparation of appeal;[4] (4) $3,750 spent on researching the effects of plaintiffs' death on the judgment and injunctive relief;[5] (5) $8,750 for the unsuccessful multiplier claim; and (6) $1,075 for settlement discussions.[6]
¶ 34 "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 27, 482 P.2d 775 (1971). Here the trial court's reduction of hours spent on injunctive relief, settlement issues, and the multiplier claim was based on the theory these efforts were ultimately unsuccessful, not because the attorney hours were spent on "unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers, 100 Wash.2d at 597, 675 P.2d 193. As such, these reductions are based on "untenable reasons" and constitute an abuse of discretion.
¶ 35 The trial court's reduction of the hours spent by plaintiffs' counsel on a cross-motion for summary judgment in United States District Court, a motion on the merits, and a motion to file a second amended complaint rests on similarly flawed reasoning. The trial court concluded these efforts "[were] not reasonably related to, nor did [they] cumulatively result in plaintiffs' favorable resolution." Clerk's Papers (CP) at 651. This is incorrect. Pham and Lara's cross-motion for summary judgment sought judgment *986 as a matter of law on their race and national origin discrimination claim, the very claim on which they ultimately prevailed at trial. The simple fact that a particular motion did not cumulatively result in favorable resolution does not justify the disallowance of associated fees. Chuong Van Pham v. Seattle City Light, 124 Wash.App. 716, 726, 103 P.3d 827 (2004) (citing Martinez, 81 Wash. App. at 243, 914 P.2d 86).
¶ 36 The motion on the merits and the motion to file a second amended complaint also concerned the race and national origin claim, and thus must be included in the lodestar figure because, as correctly observed by the Court of Appeals, these efforts were "related to the discrimination claims on which [Pham and Lara] ultimately achieved substantial relief." Id. The Court of Appeals found the trial court "improperly focused on the short term failure of certain components of the litigation, when the focus should have been on the long term success of the litigation as a whole." Id. The Court of Appeals correctly reasoned: "[w]here the plaintiffs' claims involve a common core of facts and related legal theories, a plaintiff who has won `substantial relief' should not have the fee reduced simply because the trial court did not adopt each contention raised." Id. at 726, 103 P.3d 827 (citing Martinez, 81 Wash. App. at 243, 914 P.2d 86).
¶ 37 Picking through the record to determine the success of each individual motion misses the point of a "lodestar" fee, which is to award reasonable attorney fees to plaintiffs who prevail in litigation as a whole. Courts have rejected the theory that plaintiffs should be denied compensation for time spent pursuing certain issues that "ultimately did not become litigated . . . or upon which plaintiffs ultimately did not prevail." Davis v. County of Los Angeles, 8 Empl. Prac. Dec. (CCH) ¶ 9444, at 5049 (C.D.Cal.1974), quoted in Hensley v. Eckerhart, 461 U.S. 424, 431, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Instead, under the "lodestar" method, "plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally compensated by a fee-paying client for all time reasonably expended on a matter." Id. (emphasis added). See also Swann v. Charlotte-Mecklenburg Bd. of Educ., 66 F.R.D. 483, 484 (W.D.N.C.1975) (prevailing plaintiffs awarded fees after court determined the obtained results "were excellent and constituted the total accomplishment of the aims of the suit" notwithstanding plaintiffs' losses on "certain minor contentions").
¶ 38 As Taylor v. Sterrett, 640 F.2d 663, 669 (5th Cir.1981) explains, "[T]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought." And the United States Supreme Court in Hensley properly notes that in many cases "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435, 103 S.Ct. 1933. In Hensley the Supreme Court agreed with the Missouri District Court's finding that
"[Petitioners'] suggested method of calculating fees is based strictly on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Under this method no consideration is given for the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, or the extent to which a party may prevail on various issues."
Id. (alteration in original) (quoting Record 220).[7]
¶ 39 Justice William J. Brennan's dissent in Hensley refers to the calculation of attorney fees under 42 U.S.C. § 1988 as a "task" Congress has "entrusted" to the courts, a task Justice Brennan views as "crucial to the vindication of individuals' rights in a society *987 where access to justice so often requires the services of a lawyer." Hensley, 461 U.S. at 442, 103 S.Ct. 1933 (Brennan, J., concurring in part, dissenting in part). In response to the Hensley Court's emphasis on the necessity of "prevent[ing] `windfalls'" (id. at 444, 103 S.Ct. 1933), Justice Brennan cautions: "lower courts must not forget the need to ensure that civil rights plaintiffs with bona fide claims are able to find lawyers to represent them." Id. He continues: "the legislative history of § 1988 reveals Congress' basic goal that attorneys . . . view civil rights cases as essentially equivalent to other types of work they could do, even though the monetary recoveries in civil rights cases . . . would seldom be equivalent to recoveries in most private-law litigation." Id. at 447, 103 S.Ct. 1933 (Brennan, J., concurring in part, dissenting in part). And "no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." Id. at 449, 103 S.Ct. 1933.
¶ 40 Because I agree with the Court of Appeals' contention that the trial court failed to focus on the long term success of the litigation as a whole when calculating the lodestar, I would hold the trial court's reduction of plaintiffs' fees constitutes an obvious abuse of discretion.
II. The Fee Multiplier
¶ 41 Pham and Lara sought a contingency multiplier of 2.0. Their request was based on plaintiffs' counsel having accepted the case on a contingent fee basis,[8] Pham and Lara's difficulty in providing details of discrimination, and the necessity of adopting a high-risk litigation strategy of relying heavily on evidence gathered from adverse witnesses and cross-examination. However these factors are the very ones which mandate a multiplier; they certainly do not foreclose it.
¶ 42 Fee enhancements are based on the notion that "attorney[s] who take[] such [] case[s] on a contingent fee basis assume[] a substantial risk that a fee will never materialize." Pham, 124 Wash.App. at 723, 103 P.3d 827. And marketplace experience "`indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk.'" Bowers, 100 Wash.2d at 598, 675 P.2d 193 (quoting Samuel R. Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 281, 325 (1977)).
¶ 43 The trial court determined Pham and Lara's case was "high risk"[9] but denied the multiplier request because "the difficulty of the case, and its associated risk, which was a consequence of the plaintiffs' challenges in articulating their claims and the paucity of compelling relevant evidence of discrimination, are not grounds for a multiplier." CP at 653-54 (Finding of Fact 34). This conclusion makes little sense. The plain language of Bowers directs a trial court to assess the risk associated with a claim in deciding whether a multiplier is appropriate. See Bowers, 100 Wash.2d at 598, 675 P.2d 193. The Bowers approach does not contemplate denying a multiplier on the basis of the source of that risk. Thus, the majority correctly holds "the trial court should not have used [Pham and Lara's] inability to articulate their claims as justification for denying the multiplier." Majority at 983-84.
¶ 44 But the majority should have gone further. Plaintiffs' inability to articulate their claims and the difficulties of proof arising from this type of disparate treatment claim are the precise reasons the trial court should apply a multiplier. Thus the trial court said "no" to a multiplier for the very reason it should have said "yes," and faulty analysis denying civil rights attorneys their fees is simply unacceptable. A contingency adjustment is not an unearned gain or a windfall for plaintiffs' attorney. It is the inherent risk of this type of case that justifies the fee. And denying civil rights attorneys adequate fees will simply discourage lawyers from taking difficult cases, not to *988 mention those especially difficult cases with "less-than-articulate" clients.
¶ 45 As noted by Hensley, Congress has taken steps to ensure § 1988 did not become "a `relief fund for lawyers'" (Hensley, 461 U.S. at 446, 103 S.Ct. 1933 (quoting 122 Cong. Rec. 33314 (1976) (remarks of Sen. Kennedy))) by limiting fee awards to "prevailing" plaintiffs only and leaving district courts with the discretion to deny fees entirely when a fee award would be "unjust." Id. With regard to contingency cases, the Court reasoned:
Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate. The difference, however, reflects the time-value of money and the risk of nonrecovery usually borne by clients in cases where lawyers are paid an hourly rate. Courts applying § 1988 must also take account of the time-value of money and the fact that attorneys can never been 100% certain they will win even the best case.
Hensley, 461 U.S. at 448-49, 103 S.Ct. 1933 (Brennan, J., concurring in part, dissenting in part).
¶ 46 Risk of loss must be taken into consideration or this type of case will never be brought. Pham and Lara were fortunate their claim prevailed. But for Pham and Lara's attorney, this case might represent one win for every five losses, and, moreover, no reasonable lawyer can afford to give away $50,000 of his time for free. A contingency multiplier is not "double payment" or a "windfall" for plaintiffs' lawyer; it is simply adequate compensation for prevailing in complex and risky litigation. The majority's decision will preclude plaintiffs suffering discrimination from bringing these actionsthe very result WLAD seeks to prevent. See Hensley, 461 U.S. at 456, 103 S.Ct. 1933 (Brennan, J., concurring in part, dissenting in part) ("[T]he prospect of protracted appellate litigation regarding attorney's fee awards to prevailing parties is likely to discourage litigation by victims of other civil rights violations. . . . The more obstacles that are placed in the path of parties who have won significant relief and then seek reasonable attorney's fees, the less likely lawyers will be to undertake the risk of representing civil rights plaintiffs seeking equivalent relief in other cases. It may well become difficult for civil rights plaintiffs with less-than-certain prospects for success to obtain attorneys."). I believe a fee multiplier is warranted and therefore would remand for calculation, not possible denial, of a multiplier pursuant to established precedent.
III. Income Tax Consequences of Noneconomic Discrimination Awards
¶ 47 Finally, I would hold WLAD's "any other appropriate remedy" clause (RCW 49.60.030(2)) entitles prevailing plaintiffs to compensation for the increase in tax liability resulting from noneconomic damages. The majority upholds the trial court's denial of a tax offset for Pham and Lara's noneconomic damages despite the fact we have previously affirmed supplemental damage awards for tax consequences of the noneconomic portion of a judgment. In Blaney v. International Association of Machinists & Aerospace Workers, 151 Wash.2d 203, 87 P.3d 757 (2004) (Blaney II), Blaney prevailed on her sex discrimination claim and obtained a judgment for $638,764, which included awards for front and back pay, pain and suffering, and, like here, emotional distress. Id. at 208, 87 P.3d 757. She was also awarded a supplemental judgment of $235,625.38 for prejudgment interest, attorney fees, and costs. Id.
¶ 48 To support her request for a supplemental judgment to offset the federal tax consequences, Blaney offered expert testimony that the total of both amounts would be considered gross income under federal tax law and would result in $244,753 in tax obligations she would not have incurred but for the lump sum judgments. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, 114 Wash.App. 80, 93 n. 31, 55 P.3d 1208 (2002) (Blaney I). Blaney argued the supplemental judgment was necessary to make her whole under WLAD. Id. at 92, 55 P.3d 1208.
¶ 49 WLAD provides:

*989 Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).
RCW 49.60.030(2) (emphasis added).
¶ 50 I agree with Blaney and would hold the "any other appropriate remedy" clause entitles the prevailing plaintiff to a supplemental award for the additional federal income tax consequences of damage awards because WLAD incorporates the remedies available under the federal civil rights act. Blaney II, 151 Wash.2d at 216, 87 P.3d 757. We explained that Blaney "is not seeking a judgment to offset all the taxes she will incur from the $638,764 damage award. She is seeking a judgment only for the $244,753 in additional taxes she must pay above and beyond those she would have had to pay if the [defendant] had properly hired her." Id. at 209, 87 P.3d 757 (citation omitted). As discussed above, both of these figures included awards for pain and suffering as well as emotional distress, and our holding did not limit itself to wage and benefit awards only. The Court of Appeals correctly concluded Blaney II's reasoning "does not provide a basis to confine the award to the tax consequences on lost wages." Pham, 124 Wash. App. at 729, 103 P.3d 827.
¶ 51 WLAD's purpose is to "deter and to eradicate discrimination in Washington." Marquis v. City of Spokane, 130 Wash.2d 97, 109, 922 P.2d 43 (1996). It "`embodies a public policy of the "highest priority."'" Martini v. Boeing Co., 137 Wash.2d 357, 365, 971 P.2d 45 (1999) (quoting Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 521, 844 P.2d 389 (1993)). WLAD mandates liberal construction to accomplish its purposes. RCW 49.60.020; Martini, 137 Wash.2d at 364, 971 P.2d 45. The holding of the Court of Appeals is consistent with this approach. The jury found Pham and Lara had suffered discrimination and determined $120,000 would compensate them for the accompanying emotional distress. This award will be diminished by federal taxes. Despite the majority's faulty assertion "[s]hifting the tax burden on these awards entirely to the defendant simply goes too far," requiring Seattle City Light to reimburse Pham and Lara for the tax consequences of their award simply makes the plaintiffs whole. Majority at 981.
¶ 52 The majority cites O'Neill v. Sears, Roebuck & Co., 108 F.Supp.2d 443 (E.D.Pa. 2000) as an example of a court "explicitly limiting an award covering increased tax liability to front and back pay only." Majority at 981. In O'Neill the court held allowing a plaintiff to recover the tax consequences of compensatory and liquidated damages would constitute a "windfall," because such damages were "only a product of this lawsuit" and "[plaintiff] would not have received these sums but for the defendant's discriminatory action." O'Neill, 108 F.Supp.2d at 448 (emphasis omitted). However, as noted by the Court of Appeals, noneconomic damages are not a gain for the plaintiff, but instead simply "[substitute] for the sense of well-being that the plaintiff lost as a result of being discriminated against." Pham, 124 Wash.App. at 731, 103 P.3d 827. "Emotional distress damages, just as much as front and back pay, are awarded to make the victim whole." Id. at 731, 103 P.3d 827. Further, because "[t]he legislative command to award damages is . . . stronger in Washington's statute than in Title VII," Martini, 137 Wash.2d at 375, 971 P.2d 45, and considering WLAD's purpose and its mandate of liberal construction, we are not bound by the federal courts on this question.
¶ 53 Accordingly, I would hold WLAD allows compensation for the additional federal income tax consequences of noneconomic damage awards. Furthermore, the trial court abused its discretion when it reduced the lodestar amount and failed to apply a multiplier. The majority's failure to correct these mistakes leaves victims of civil rights abuses guessing whether their recovery will be radically reduced by uncompensated reasonable attorney fees and leaves their diligent *990 and vigorous lawyers without an adequate fee even when they prevail on a very risky case.
¶ 54 I dissent because I believe the majority's decision is antithetical to WLAD's purpose of eradicating discrimination; indeed, discrimination cannot be eradicated if plaintiffs' claims are never brought.
WE CONCUR: TOM CHAMBERS, and SUSAN OWENS, JJ.
NOTES
[1] The AMT, in general terms, is an alternative tax system designed to ensure that the very wealthy pay more than a minimal amount of income tax. Polsky & Befort, supra, at 69-70 n. 3. In 2004, the American Jobs Creation Act of 2004 (AJCA) amended the Internal Revenue Code to allow a taxpayer to deduct from his or her gross income attorney fees and costs paid in connection with a claim of unlawful discrimination. Comm'r of Internal Revenue v. Banks, 543 U.S. 426, 433, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005). However, the AJCA is not retroactive and in pre-AJCA cases, it was possible for an attorney fee award to be counted toward the plaintiff's gross income, making it more likely that the AMT would be triggered. Polsky & Befort, supra, at 79-80.
[1] The trial court opted to use historic fee rates for the work performed by plaintiffs' attorneys in 1997 and 1998, rather than current ones, "as an equalizing factor to time spent on abandoned, dismissed or withdrawn claims." Clerk's Papers (CP) at 640. This approach reduced the lodestar amount by $7,966.50. The Court of Appeals found no abuse of discretion, Chuong Van Pham v. Seattle City Light, 124 Wash.App. 716, 728, 103 P.3d 827 (2004), and Pham and Lara do not here challenge the use of historic fee rates. Although this issue need not be determined here, I observe that an award based on current rates makes more sense since historical rates contemplate prompt payment, not a payment deferred for years.
[2] Disallowed because Pham and Lara were not the prevailing parties on the claim for injunctive relief, and the "time for the post-trial request for injunctive relief is readily segregable from counsel's other work product." CP at 650 (Finding of Fact 28).
[3] Disallowed because the trial court "conclude[d] the . . . time was not reasonably related to nor did it cumulatively result in plaintiffs' favorable resolution." CP at 651 (Finding of Fact 29).
[4] Disallowed because "attorney fees awardable for appeal are to be determined by the Court of Appeals." CP at 649 (Finding of Fact 25).
[5] Disallowed because the court found the attorney time spent on these issues duplicative and "not reasonably related to the issues in this case and . . . not necessarily expended." CP at 651 (Finding of Fact 30).
[6] Disallowed without further explanation. CP at 648 (Finding of Fact 24).
[7] The Court in Hensley specifically held: "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440, 103 S.Ct. 1933 (emphasis added).
[8] I do not believe, however, that the nature of the fee agreement between plaintiffs and their attorney is necessarily relevant to the calculation of a reasonable fee award against the defendant.
[9] CP at 653.