IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| THE CHURCH OF THE DIVINE EARTH, | No. 55737-1-II |
| Appellant/Cross-Respondent, | |
| v. | |
| CITY OF TACOMA, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

LEE. J. — The Church of the Divine Earth (Church) appeals the superior court's judgment and findings of fact (FOF) and conclusions of law (COL) relating to an award of attorney fees. The Church challenges the superior court's reduction of hours reasonably expended, reduction of the reasonable hourly rate, denial of a multiplier, and denial of legal assistant fees in calculating the attorney fees award. The Church requests that we reverse the superior court and make our own determination of attorney fees. The City of Tacoma (City) cross-appeals, challenging the superior court's determination of hours reasonably expended and arguing that remand is required for the superior court to better articulate its reasoning for the attorney fees award.

We hold that the superior court provided sufficient reasoning such that we have insight into the superior court's exercise of discretion and the superior court did not abuse its discretion. Accordingly, we affirm.

FACTS

Terence Kuehn is the pastor of the Church of the Divine Earth. In September 2013, the Church submitted a permit application to the City of Tacoma to build a single-family "parsonage"

on a lot the Church owned. Clerk's Papers (CP) at 3. The City reviewed the Church's application and requested the Church resubmit an updated application incorporating several conditions, including a right-of-way. The Church objected to the conditions. The City eventually dropped all conditions except for the dedication of a right-of-way.[1] The Church appealed the remaining condition to the Hearing Examiner. In August 2014, the Hearing Examiner granted summary judgment in favor of the City.

The Church appealed to the Pierce County Superior Court, filing a petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW, and seeking damages under RCW 64.40.020. The Church retained Goodstein Law Group (Goodstein) to assist with the LUPA action. Goodstein's attorney fee agreement with the Church provided that the Church would be billed for services on an hourly basis. The attorneys at Goodstein who at various points assisted with the case included: Richard Sanders, who billed at $395/hour; Carolyn Lake, who billed at $295/hour; Seth Goodstein, who billed at $200/hour; and Conor McCarthy, who billed at $280/hour.[2] The attorney fee agreement also included a "legal assistant" billing rate at $80/hour. CP at 217.

---

[1] The City's stated reasoning for the dedication of the right-of-way was to promote uniformity of city streets. The street adjacent to the Church's parcel, East B Street, was a "60 foot wide right-of-way. In order to stay consistent and provide adequate street and sidewalk area, a dedication of approximately 30 feet [was] required." CP at 88.

[2] McCarthy was not mentioned in Goodstein's initial fee arrangement. There appears to be a discrepancy in McCarthy's listed billing rate. In Goodstein's itemized invoice to the Church, McCarthy has a billing rate of $280/hour. However, in Goodstein's "Attorney Fees & Costs Calculations" breakdown, it lists McCarthy's rate as $200/hour. CP at 266. The superior court's FOF also state that McCarthy's billing rate was $200/hour. However, because McCarthy's rate is both listed as and calculated at $280/hour in Goodstein's itemized invoice, it is listed as $280/hour here.

In October 2014, the Church amended its petition to include a Public Records Act (PRA), chapter 42.56 RCW, claim for which it sought damages. In February 2015, the Pierce County Superior Court granted the Church's LUPA action and invalidated the right-of-way condition.

In May 2015, the Church moved to amend its petition to add another cause of action under 42 U.S.C. § 1983. The superior court denied the Church's motion to amend its petition to bring a § 1983 claim, but allowed two amendments regarding the Church's PRA claim. The Church moved for reconsideration of the superior court's denial of its claim under 42 U.S.C. § 1983. The superior court denied the Church's motion for reconsideration. The case proceeded to trial on August 12, 2016 on the issue of damages under chapter 64.40 RCW and the PRA claim.

The superior court entered judgment against the City on the Church's PRA claim in the amount of $24,665.50. However, the superior court dismissed the Church's cause of action under chapter 64.40 RCW, denying damages because the City reasonably believed its right-of-way attachment to the permit was lawful.

The Court of Appeals affirmed.[3] The Supreme Court granted limited review on the issue of whether "the City knew or should reasonably have known its requirement for a dedication of land was unlawful," making the City liable for damages under RCW 64.40.020. *Church of Divine Earth v. City of Tacoma*, 194 Wn.2d 132, 136, 449 P.3d 269 (2019). The Supreme Court reversed the Court of Appeals, holding that the standard for damages under RCW 64.40.020 is an objective standard and remanding the case to the trial court to "determine whether the Church proved the

---

[3] *Church of the Divine Earth v. City of Tacoma*, 5 Wn. App. 2d 471, 495, 426 P.3d 268 (2018), *rev'd and remanded*, 194 Wn.2d 132 (2019).

City knew or should reasonably have known its permit condition for a dedication of land was unlawful." *Id.* at 141.

On remand, the trial court determined that the City was liable under chapter 64.40 RCW, and in January 2021, awarded damages to the Church in the amount of $8,640. The Church then moved for attorney fees, costs, and expenses totaling $636,165.24, based on 1,104.6 claimed hours of attorney work. The total amount requested by the Church included a lodestar of $416,817.63[4] with a multiplier of 1.5. The Church had deducted from its request $12,164.36 in prior payments made by the City. Sanders billed the great majority of the hours. Within its attorney fees request, the Church included $5,887.50 of legal assistant fees for work performed by Kuehn. . No Goodstein legal assistant or non-attorney staff member worked on the case.

In March 2021, the superior court heard arguments on the Church's attorney fees motion to determine the award of reasonable attorney fees. During the hearing, the superior court stated:

> I don't know that it is reasonable, to be honest with you, to expect the Court to go through six or seven years worth of billings on an oral record . . . .
> I broke [the hours] into some detail . . . as to each of the, I guess, seven phases of litigation. I broke it down by that. That was enough detail for you to have some understanding as to what the Court was doing and its basis for it. It wasn't in any way arbitrary.

Verbatim Report of Proceedings (VRP) (Mar. 19, 2021) at 13-14.

The superior court awarded the Church $253,543.66 based on 658.6 hours "reasonably expended at a blended rate of $385.03." CP at 588. The court denied the Church's request for the

---

[4] According to the Church, Goodstein deducted $14,322.37 from the initial lodestar calculation for attorney fees related to the PRA claim.

lodestar multiplier and the fees for time claimed by Kuehn as a "legal assistant." CP at 589. The

superior court made, in part, the following FOFs:

16. The Church's lawyers claimed 1,104.6 hours of attorney time representing the Church in the portion of this case relating to the permit dedication. The vast majority of the time requested is for one lawyer. While this case did proceed over several years, the actual trial was approximately 8 court days. To put this request another way, assuming a 40 hour, 5-day week, 1,104.6 hours approximates: 138 full days; 27.6 weeks; or nearly 6.4 months (still assuming 5-day weeks) for one lawyer exclusively dedicated to this case.

17. In addition to this time, the Church's lawyers asserted work done by the Church's representative (an additional 196.25 hours) should be compensated as "legal assistant" fees.

18. The Church's request of 1,104.6 hours is exclusive of hours and expenses for claims associated with the Public Records Act.

19. Of the hours claimed for attorney services this court finds 658.5 hours were reasonably expended at a blended hourly rate of $385.03 for a total reasonable attorney fee of $253,543.66. "Blended" meaning combining the relative contributions of lawyers providing services at various hourly rates. See, for example, the much lower hourly rates for attorneys Lake, [Seth[5]] Goodstein and McCarthy who also worked on this matter for Petitioner. A multiple of 1.5 requested by the Church should be denied. First, the allowed blended rate of $385.03/hour is somewhat high for this case. While Petitioner's lawyers did good work, the case was not complicated factually nor did the case present novel legal issues. In addition, many hours for which compensation is being awarded is for time that could have been done by legal staff and/or associate attorneys at far lower rates of compensation. Other than the legal assistant claim of $5,887.50 by the lawyer's client's representative, Pastor Kuehn, no other staff time was requested. The court finds not all the time claimed was reasonably spent.

20. Attorney hours claimed and allowed for various phases of the litigation are as follows:

| Phase of Litigation | Hours claimed | Hours awarded |
|---|---|---|
| Pretrial | 453.7 | 285.0 |

---

[5] Seth Goodstein's full name is used to distinguish between him and the firm, Goodstein.

| | | |
|---|---|---|
| Trial | 76.5 | 76.5 |
| Post-trial | 67.2 | 25.0 |
| Court of Appeals | 244.3 | 102.0 |
| Supreme Court | 101.3 | 40.0 |
| Remand | 104.1 | 90.0 |
| Post-judgment | 57.5 | 40.0 |

CP at 588-89 (footnote omitted).

The superior court also entered, in part, the following COLs:

3.  The Church's request for reimbursement of "legal assistant" fees for time claimed by the Church's representative is denied.

4.  The Church's request for a lodestar multiplier is denied.

5.  Judgment for reasonable attorney fees in the amount of $253,543.66 should be entered against the City of Tacoma.

CP at 589.

The Church appeals, and the City cross-appeals.

ANALYSIS

The Church appeals the superior court's calculation of reasonable attorney fees and reasonable hours worked, arguing that the superior court erred in its reduction of the hours expended, reduction to the actual hourly rate, denial of legal assistant fees, and denial of any fee multiplier. The Church requests that we reverse the superior court and, instead of remanding, "directly award the appropriate fees" based on the record. Br. of Appellant at 53.

The City cross-appeals the superior court's award of attorney fees to the Church, arguing that the superior court did "not identify which of the hours sought by the Church were ultimately awarded" and that remand is appropriate. Br. of Resp't at 15.

We disagree with both the Church and the City, and we affirm the superior court.

A.    LEGAL PRINCIPLES

An award of attorney fees is discretionary. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). "[T]he relevant inquiry is first, whether the prevailing party was entitled to attorney fees, and second, whether the award of fees is reasonable." *Ethridge v. Hwang*, 105 Wn. App. 447, 459, 20 P.3d 958 (2001).

Here, the parties do not dispute that the Church is entitled to attorney fees under RCW 64.40.020(2). RCW 64.40.020(2) provides: "The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees." The Church was successful in its action against the City under LUPA and RCW 64.40.020. Therefore, the Church may be awarded reasonable attorney fees.

The party seeking fees bears the burden of proving the reasonableness of those fees. *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632 (1998). Judges have broad discretion in determining the reasonableness of an award. *Ethridge*, 105 Wn. App. at 460. Appellate courts review attorney fee awards for abuse of discretion. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 519, 910 P.2d 462 (1996). "In order to reverse an attorney fee award, an appellate court must find the trial court . . . exercised its discretion on untenable grounds or for untenable reasons." *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

Furthermore, "[f]ee requests may be adjusted upward or downward, and deference is awarded the trial court's decision." *Boeing Co.*, 108 Wn.2d at 65.

Courts need to make an adequate record upon which they base fee awards. *Mahler*, 135 Wn.2d at 435; *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 146-47, 144 P.3d 1185 (2006) ("The trial court must provide articulable grounds for its fee award."). Specifically, courts need to enter findings of fact and conclusions of law to establish a proper record. *Mahler*, 135 Wn.2d at 435. Findings do not require detailed, hour-by-hour analyses of each lawyer's timesheets. *Taliesen Corp.*, 135 Wn. App. at 143. Furthermore, trial courts should not rely solely on the billing records of the prevailing party's attorney. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987).

As long as a court provides insight into its exercise of discretion, generally the record will be sufficient. *See Steele v. Lundgren*, 96 Wn. App. 773, 779-82, 982 P.2d 619 (1999), *review denied*, 139 Wn.2d 1026 (2000). However, "an award of substantially less than the amount requested should indicate at least approximately how the court arrived at the final numbers and explain why discounts were applied." *Taliesen Corp.*, 135 Wn. App. at 146. A court's failure to make an adequate record will result in a remand. *Mahler*, 135 Wn.2d at 435.

When calculating fee awards, Washington courts employ the lodestar method. *Id.* at 433-34. First, a court must determine that "counsel expended a reasonable number of hours in securing a successful recovery for the client." *Id.* at 434. This means courts should exclude wasteful or duplicative hours or time spent on unsuccessful claims. *Id.*; *accord Bowers v. Transamerica Title Ins.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983) ("The court must limit the lodestar to hours

8

reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.").

The reasonable number of hours are then multiplied by each lawyer's reasonable hourly rate of compensation. *Steele*, 96 Wn. App. at 780. An attorney's usual hourly rate is not conclusively a reasonable rate and other factors may necessitate adjustment. *Bowers*, 100 Wn.2d at 597. Factors include the "level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." *Id.*

Parties may also recover legal assistant fees as part of the attorney fee award. *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 849, 917 P.2d 1086 (1995). When assessing whether legal assistant services should be compensated, courts consider the following criteria:

> (1) the services performed by the non-lawyer personnel must be legal in nature; (2) the performance of these services must be supervised by an attorney; (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work; (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical; (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and (6) the amount charged must reflect reasonable community standards for charges by that category of personnel.

*Absher Constr. Co.*, 79 Wn. App. at 845.

We review findings of fact for substantial evidence and conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). "A conclusion of law erroneously described as a finding of fact is reviewed as a conclusion of law." *Willener v. Sweeting*, 107 Wn.2d

388, 394, 730 P.2d 45 (1986). Likewise, a "finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact." *Id.* Unchallenged findings of fact are treated as verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

B.      THE CHURCH'S APPEAL

1.      Hours Reasonably Expended

The Church assigns error to the superior court's FOF 16 and FOF 20, arguing that the superior court erred when it reduced the Church's reasonable hours expended from 1,104.6 hours to 658.5 hours because the superior court did not sufficiently explain its reasoning. We affirm the superior court's reduction of hours.

a.      Finding of Fact 16

FOF 16 states:

> The Church's lawyers claimed 1,104.6 hours of attorney time representing the Church in the portion of this case relating to the permit dedication. The vast majority of the time requested is for one lawyer. While this case did proceed over several years, the actual trial was approximately 8 court days. To put this request another way, assuming a 40 hour, 5-day week, 1,104.6 hours approximates: 138 full days; 27.6 weeks; or nearly 6.4 months (still assuming 5-day weeks) for one lawyer exclusively dedicated to this case.

CP at 587-88. The Church argues there is not substantial evidence to support the superior court's "characterization" of the hours spent. Br. of Appellant at ix. Specifically, the Church claims the superior court failed to acknowledge that the hours spent were over the course of seven years, which amounts to "12.99 hours" per month over "85 months." Br. of Appellant at ix. Additionally, the Church questions whether FOF 16 should be reviewed as a legal conclusion.

The first sentence of FOF 16 states a fact—that the Church's attorneys claimed 1,104.6 hours of work relating to the permit dedication. The superior court reviewed declarations from the

10

Church's attorneys regarding hours spent, which included an itemized invoice of services rendered that totaled 1,104.6 hours. The second sentence, that the vast majority of time requested is for one lawyer, is also supported by the Church's own documentation and in the Church's brief.

As to the Church's assignment of error to the final two sentences of FOF 16, the superior court *does* acknowledge that the case "proceed[ed] over several years"; therefore, the court's "characterization" of hours spent is not inaccurate and is supported by substantial evidence. CP at 587. The Church appears to contest the superior court's breakdown of time spent into hours, weeks, and days, but provides no argument as to why the breakdown is erroneous. Again, the superior court merely states a fact. Because FOF 16 merely recites facts, we do not review FOF 16 as a legal conclusion. Therefore, the superior court did not err when it entered FOF 16.

        b.     Finding of Fact 20

FOF 20 states:

Attorney hours claimed and allowed for various phases of the litigation are as follows:

| Phase of Litigation | Hours claimed | Hours awarded |
| --- | --- | --- |
| Pretrial | 453.7 | 285.0 |
| Trial | 76.5 | 76.5 |
| Post-trial | 67.2 | 25.0 |
| Court of Appeals | 244.3 | 102.0 |
| Supreme Court | 101.3 | 40.0 |
| Remand | 104.1 | 90.0 |
| Post-judgment | 57.5 | 40.0 |

CP at 589. The Church raises seven issues with FOF 20: it claims (1) FOF 20 should be reviewed as a legal conclusion; (2) the superior court erred in "rejecting Church's substantiated, reasonable lodestar rates"; (3) the superior court erred in denying a multiplier; (4) the superior court erred in reducing hours expended and the fee award; (5) the superior court improperly speculated on allocation of work; (6) the superior court erred when it did not "show[] its work"; and (7) the superior court erred "in not explaining its fee reductions." Br. of Appellant at xii (capitalization omitted). The Church does not argue, however, that FOF 20 is not supported substantial evidence.

To the extent the Church assigns error to FOF 20 based on the superior court's reduction of the reasonable hourly rate and denial of a multiplier, those issues will be discussed in the analysis below. Because FOF 20 is a breakdown of hours spent and it does not articulate legal principles, we do not review FOF 20 as a legal conclusion.

The Church characterizes the superior court's hour reduction as a "40% reduction from the actual hours billed." Br. of Appellant at 34. The Church cites to *Stanger v. China Elec. Motor, Inc.*, where the Ninth Circuit Court of Appeals held the district court did not adequately explain a 30% reduction of compensable hours. 812 F.3d 734, 739 (9th Cir. 2016). In *Stanger*, the district court "noted one or two considerations that *might* have supported its decision [but] failed to explain how it weighed those considerations when calculating the final award." *Id.* (emphasis added).

Here, while a more thorough explanation of the hours awarded is generally desired, it is clear from the record that the superior court did more than note one or two considerations that "might" have supported its decision—the court here addressed outright that it believed many hours were not reasonably expended. Furthermore, while litigation has extended over several years, the record shows that throughout that time, the Church pursued various unsuccessful claims. Courts

must discount "wasteful or duplicative hours" or time spent on "unsuccessful theories or claims." *Mahler*, 135 Wn.2d at 434.

During the March 19 hearing, the superior court adopted the Church's category breakdown of the phases of litigation and divided the 1,104.6 hours requested into seven phases. The record shows that the superior court considered each phase and made selective reductions. For instance, in the "Supreme Court" phase, the Church requested 101.3 hours, but the superior court awarded only 40 hours, which is approximately a 60% reduction. CP at 589. However, in other phases, the superior court either did not deduct hours or deducted relatively few. For example, the superior court allowed all hours claimed for the "Trial" phase and deducted only 14 hours (or 13%) in the "Remand" phase. CP at 589. While, again, the superior might have been more thorough in its explanations, the record shows the superior court considered each phase and made a deliberate decision as to the number of hours it reduced; the court did not wholesale reduce hours arbitrarily or apply blanket percentage cuts. The superior court even stated, "It wasn't in any way arbitrary" with the hope that the parties would "have some understanding as to what the Court was doing and its basis for it." VRP (Mar. 19, 2021) at 14. The record shows that the superior court considered 1,104.6 hours spent on a single issue, even with an eight-day trial and even over the course of several years, to be unreasonable.

The Church additionally argues that the superior court "erred *if* it disregarded the Church's PRA fee segregation." Br. of Appellant at 48 (emphasis added). The Church asserts that it is impossible to know if the superior court truly disregarded the PRA fee segregation because the superior court failed to provide a "reasoned explanation" that it did not. Br. of Appellant at 49.

13

With regard to the PRA fee segregation, the superior court stated in FOF 18, "The Church's request of 1,104.6 hours is exclusive of hours and expenses for claims associated with the Public Records Act." CP at 588. The superior court's finding demonstrates that it properly considered the PRA fee segregation and still believed not all of the 1,104.6 hours claimed by the Church were reasonably expended. FOF 18 is a verity on appeal as the Church does not challenge FOF 18 nor does it point to any evidence in the record that the superior court improperly disregarded the PRA fee segregation.

The record provides sufficient insight into the superior court's exercise of discretion. Reviewing courts give deference to the lower courts in fee award decisions. *Boeing Co.*, 108 Wn.2d at 65. Because the superior court has articulated some reasoning that provides insight into its exercise of discretion in reducing the number of hours reasonably expended, the superior court did not manifestly abuse its discretion.

2. "Blended" Rate

The Church argues that the superior court erred when it used the "blended" hourly rate of $385.03 as the reasonable hourly fee in its lodestar calculation. Br. of Appellant at 33. The Church alleges that the superior court did not clearly explain that Sanders' normal rate is $395 per hour, and because Sanders spent the vast majority of the time working on the case, the imposition of the $385.03 rate was actually a fee reduction for most of the work performed. Additionally, the Church asserts the superior court impermissibly speculated as to how other law firms should have staffed the Church's case because the superior court stated, "[M]any hours were 'time that could have been done by legal staff or associate attorneys at far lower rates.'" Br. of Appellant at 36. We disagree.

14

An attorney's usual hourly rate is not conclusively reasonable, and other factors, such as skill, case complexity, and amount of potential recovery, may affect a court's determination of the reasonable rate. *Bowers*, 100 Wn.2d at 597. Moreover, even though the City did not object to Sanders' hourly rate, the superior court is not obligated to adopt Sanders' billing records. *See Nordstrom, Inc.*, 107 Wn.2d at 744.

As part of its challenge to the hourly rate, the Church assigns error to FOF 19. FOF 19 states:

> Of the hours claimed for attorney services this court finds 658.5 hours were reasonably expended at a blended hourly rate of $385.03 for a total reasonable attorney fee of $253,543.66. "Blended" meaning combining the relative contributions of lawyers providing services at various hourly rates. See, for example, the much lower hourly rates for attorneys Lake, [Seth] Goodstein and McCarthy who also worked on this matter for Petitioner. A multiple of 1.5 requested by the Church should be denied. First, the allowed blended rate of $385.03/hour is somewhat high for this case. While Petitioner's lawyers did good work, the case was not complicated factually nor did the case present novel legal issues. In addition, many hours for which compensation is being awarded is for time that could have been done by legal staff and/or associate attorneys at far lower rates of compensation. Other than the legal assistant claim of $5,887.50 by the lawyer's client's representative, Pastor Kuehn, no other staff time was requested. The court finds not all the time claimed was reasonably spent.

CP at 588. The Church raises several issues with FOF 19, including asserting that the superior court erred in rejecting the Church's "substantiated, reasonable lodestar rates," erred in its actual rate reduction, erred when it failed to adequately explain the rate reduction, and that FOF 19 should be reviewed as a legal conclusion. Br. of Appellant at x (capitalization omitted).

The superior court's statement, "A multiple of 1.5 requested by the Church should be denied," could be construed as a legal conclusion. CP at 588. To the extent that it is a legal conclusion, we review it de novo. The superior court's denial of a multiplier, along with the

15

accompanying legal principles pertaining to multipliers, is addressed in subsection 4 below. The remaining statements within FOF 19 are comprised of facts and reviewed for substantial evidence.

Here, the Church requested a rate of $395 for Sanders for 1,026.7 hours of work, $295 for Lake for 44 hours, $200 for Seth Goodstein for 33 hours, and $280[6] for McCarthy for 0.9 hours. In its findings of fact, the superior court acknowledged that Sanders' normal billing rate is $395 per hour. But the superior court explained that it combined "the relative contributions of lawyers providing services at various hourly rates. See, for example, the much lower hourly rates of Lake, [Seth] Goodstein and McCarthy." CP at 588. Lake, an attorney with nearly 40 years of experience, and an owner and managing attorney of Goodstein, bills $100 less per hour than Sanders. Seth Goodstein, who bills at just over half of what Sanders bills, has over 10 years of experience and is licensed in both Washington and Florida. The superior court stated in its FOF 4 that "the blended hourly rate of $385.03 is reasonable based on the three lawyers' experience and expertise for the community in which they practice." CP at 586. The Church did not assign error to FOF 4. Unchallenged findings of fact are treated as verities on appeal. *Homan*, 181 Wn.2d at 106.

The record shows that the superior court landed on $385.03 per hour based on the declarations of Sanders, Lake, and Seth Goodstein, and the fact that Sanders billed the vast majority of hours. In acknowledging Sanders' time, the superior court allowed the "somewhat high" rate of $385.03 even though "the case was not complicated factually nor did [it] present novel legal issues." CP at 588. $385.03 is only a 3% discount of Sanders' normal rate. Furthermore, while the superior court questioned whether or not work might have been done by

---

[6] McCarthy's rate is listed as $280/hour, as noted in footnote 2 above, despite the fact that the Church's briefing lists his rate at $200/hour.

associate attorneys at a lower rate, this comment speaks to consideration of the level of skill and expertise needed in the litigation. *See Bowers*, 100 Wn.2d at 597.

While typically courts should calculate the reasonable rate for each attorney, Sanders was functionally the sole attorney on this case given that he performed the "vast majority of the work." Here, it is clear that the superior court considered the attorneys' experience and the community in which they practiced. The superior court found the rate too high because some of the legal work did not require the expertise reflected in Sanders' $395 per hour rate. "[A] trial court has the inherent knowledge and experience to evaluate the reasonableness of an hourly rate." *State v. Numrich*, 197 Wn.2d 1, 31, 480 P.3d 376 (2021); *accord Brown v. State Farm Fire & Cas. Co.*, 66 Wn. App. 273, 283, 831 P.2d 1122 (1992) ("The court . . . is itself an expert on the question of the value of legal services, and may consider its own knowledge and experience concerning reasonable and proper fees, and may form an independent judgment either with or without the aid of testimony of witnesses as to value" (quoting STUART M. SPEISER, ATTORNEY'S FEES § 18:14 at 478 (1973)). Therefore, the superior court did not manifestly abuse its discretion when it applied a blended hourly rate of $385.03.

The Church also assigns error to COL 5, which states, "Judgment for reasonable attorney fees in the amount of $253,543.66 should be entered against the City of Tacoma." CP at 589. However, this conclusion is supported by the superior court's findings relating to the reasonable number of hours expended and the reasonable hourly rate in FOF 19 and FOF 20.

Additionally, the Church argues that the superior court erred in its fee award because "damages award[ed] in [a] civil right[s] case are not determinative of [an] attorney fee award."

17

Br. of Appellant at 44. The Church describes in detail courts that have upheld attorney fee awards despite smaller damage awards.

Here, the superior court allowed an attorney fee award of $253,543.66 when the damages award was only $8,640. A court may consider the potential recovery in an award of attorney fees, but it is not determinative. *See Bowers*, 100 Wn.2d at 597. There is nothing in the record—and importantly, the Church does not identify anything in the record—to suggest that the superior court improperly considered the Church's $8,640 damages award in its determination of the attorney fee award.

3.      Legal Assistant Fees

The Church argues that the superior court erred in denying "paralegal" or legal assistant fees to the Church for Kuehn's services throughout the litigation. Br. of Appellant at 50. Specifically, the Church assigns error to FOF 17 and COL 3.

FOF 17 states:

In addition to this time, the Church's lawyers asserted work done by the Church's representative (an additional 196.25 hours) should be compensated as "legal assistant" fees.

CP at 588. FOF 17 includes a footnote, which states, "Counsel's claimed legal assistant is Petitioner's Pastor, Terence Kuehn. Pastor Kuehn was not and is not an employee of Petitioner's counsel's law firm, Goodstein Law Group." CP at 588.

COL 3 states, "The Church's request for reimbursement of 'legal assistant' fees for time claimed by the Church's representative is denied." CP at 589. The Church asserts that Kuehn's services meet the standard for recovery of non-lawyer personnel fees as articulated in *Absher Constr. Co*. We disagree.

18

The Church's challenge to FOF 17 is that it should be reviewed as a conclusion of law, and whether, as a matter of law, a legal assistant must be an employee at the same firm as the supervising attorney in order to qualify for fees. FOF 17 states facts—that the Church asserted Kuehn should be compensated as a "legal assistant" and that Kuehn is not a Goodstein employee. Therefore, we review FOF 17 as a finding of fact.

The Church does not assert that FOF 17 is not supported by substantial evidence. Indeed, neither Kuehn nor Sanders declare that Kuehn was a Goodstein employee, so it is accurate for the superior court to state that Kuehn was not and is not an employee of Goodstein. Furthermore, the Church's assertion that it should recover for Kuehn's work as a legal assistant is evidenced in the record by its submission of Kuehn's "Case Net Hour Breakdown." CP at 300. Accordingly, FOF 17 is supported by substantial evidence.

The Church seeks to recover $5,887 for 196.25 hours spent by Kuehn as a legal assistant. The Church states: "Mr. Kuehn has formal paralegal training, specific real estate training and critical knowledge of the issues, worked under the supervision of attorney Sanders, and his time records are detailed and set forth in the application. Entries which may not meet the legal assistant standard were deleted." Br. of Appellant at 51.

Both Sanders and Kuehn submitted declarations in support of the fee award for Kuehn's services. Sanders certified that Kuehn "rendered services as a legal assistant to [Goodstein] under [his] supervision." CP at 392. Kuehn declared that he is "a trained paralegal [who] completed the required course and received a certificate of completion from UPS Law School in the late 1980's," and he has worked with "attorneys Douglas Hales and William Stoddard as a paralegal." CP at

19

297, 298. Kuehn also attached to his declaration a detailed "Case Net Hour Breakdown" of his time spent. CP at 300.

While Kuehn may have been supervised by Sanders, the record is clear that Kuehn was not employed by the Goodstein law firm as a legal assistant. Kuehn was a representative of the Church, the law firm's client. Moreover, the record does not show that the superior court denied legal assistant fees *because* Kuehn was not an employee of Goodstein. And the record is not clear that Keuhn is qualified as a paralegal or legal assistant. While Kuehn completed a paralegal "course" at UPS Law School for which he received a "certificate of completion," he did so over 30 years ago. CP at 297. Further, while Kuehn stated that he worked with two attorneys, the record does not show when he worked for those attorneys, or for how long. Indeed, Kuehn stated in his declaration that he spent his career as a real estate broker, not a paralegal. More importantly, even taking Kuehn's paralegal qualifications at face value, his "Case Net Hour Breakdown" does not demonstrate that his time spent for which fees are requested was entirely legal in nature or that it was reasonable. For example, in many instances, Kuehn "billed" time for emails he sent to and received from Goodstein. There is no distinction between his receipt of and reply to emails as a "legal assistant" versus as a representative for the Church, Goodstein's client. As the City aptly put, "Kuehn was the plaintiff and [communicated with] his attorney about the facts on his lawsuit." Br. of Resp't at 53. Thus, the *Absher* factors are not met, and the superior court did not abuse its discretion in denying legal assistant fees related to work performed by Kuehn.

4.    Multiplier

The Church argues that the superior court erred in denying the Church's requested multiplier. The Church asserts that the superior court failed to recognize the "civil rights nature"

of the claim, the "high risk of non-payment," and erred when it gave no "detailed explanation" for its denial of the multiplier. Br. of Appellant at 34. We disagree.

   a.  Legal Principles

There is a strong presumption that the lodestar represents a reasonable fee. *Chuong Van Pham*, 159 Wn.2d at 542. "[T]he lodestar analysis already contemplates a reasonable attorney rate based upon category of attorney, type of work performed, and other factors." *Deep Water Brewing, LLC v. Fairway Res., Ltd.*, 170 Wn. App. 1, 10, 282 P.3d 146 (2012). Therefore, any adjustments to the lodestar are "both discretionary and rare." *Id.*; *accord Gosney v. Fireman's Fund Ins.*, 3 Wn. App. 2d 828, 887, 419 P.3d 447, *review denied*, 191 Wn.2d 1017 (2018) ("Adjustments to the lodestar are reserved for rare occasions."), *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) ("[A] multiplier is warranted only in 'rare and exceptional circumstances.'" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010)).

Multipliers may be appropriate in contingency fee cases or for exceptionally good work. *Bowers*, 100 Wn.2d at 598. "'The contingency adjustment is designed solely to compensate for the risk that no fee would be recovered.'" *Travis v. Wash. Horse Breeders Ass'n*, 111 Wn.2d 396, 411, 759 P.2d 418 (1988) (quoting *Travis v. Wash. Horse Breeders Ass'n*, 47 Wn. App. 361, 369, 734 P.2d 956 (1987)). Accordingly, it applies when "there is no fee agreement that assures the attorney of fees regardless of the outcome of the case." *Bowers*, 100 Wn.2d at 599. Additionally, adjustments to reflect the quality of work are extremely limited because "in virtually every case the quality of work will be reflected in the reasonable hourly rate." *Id*.

b. Denial of Multiplier

The Church assigns error to COL 4. COL 4 states, "The Church's request for a lodestar multiplier is denied." CP at 589. Here, the Church had an hourly fee agreement with Goodstein in which the Church agreed to pay the listed hourly rates for Sanders and other Goodstein attorneys and staff. The Church and Goodstein never had a contingency fee agreement. In its briefing, the Church states, "The amount at issue was small so a contingency based on a percentage of the recovery was not viable." Br. of Appellant at 19. Regardless, this is not a contingency fee agreement case.

The Church cites to several cases where a multiplier was upheld due to the high risk of non-payment. However, each of those cases involved a contingency fee agreement. *See D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1387 (9th Cir. 1990) ("D'Emanuele's fee agreement with attorney Guziak was a 'risky' contingent fee arrangement."); *Fadhl v. City & County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988) ("Fadhl would have faced severe difficulties in obtaining an attorney without a contingency fee agreement that held out the possibility of substantial enhancement over the ordinary hourly rate."); *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986) ("[T]he district court exercised its discretion to increase the fee because of the contingent nature of the fee arrangement with the plaintiffs.").

Here, Goodstein and the Church contracted for Goodstein to be paid on an hourly basis. Goodstein and the Church did not have a contingency fee agreement. While Goodstein took on the risk of non-payment when it decided to continue its representation of the Church even though the Church stopped paying its attorney fees owed for work performed, it had grounds to pursue payment from the Church based on their attorney fee agreement, regardless of the case's outcome.

22

*See Bowers*, 100 Wn.2d at 599. This would not have been the case in a contingency fee arrangement, which is what the contingency adjustment is designed to compensate. *Travis*, 111 Wn.2d at 411.

The Church devotes considerable briefing to the "civil rights nature" of the case at issue in support of its contention that a multiplier is warranted. The Church states, "'[T]he possibility of a multiplier works to encourage civil rights attorneys to accept difficult cases'" because "'the lodestar figure [may] not adequately account for the high-risk nature of a case.'" Br. of Appellant at 28 (quoting *Chuong Van Pham,* 159 Wn.2d at 542)*.* However, the cases that the Church cites to are, again, contingency fee cases. *See, e.g.*, *Chuong Van Pham*, 159 Wn.2d at 541 (plaintiffs sought lodestar adjustment based on contingent nature of their case); *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 377, 798 P.2d 799 (1990) (affirming the trial court's award of attorney fees without an inflation adjustment because the case was not public interest litigation); *Martinez v. City of Tacoma*, 81 Wn. App. 228, 232, 914 P.2d 86 (contingent fee arrangement), *review denied*, 130 Wn.2d 1010 (1996); *Fadhl*, 859 F.2d at 651 (contingency fee enhancement).

The superior court stated, "A multiple of 1.5 requested by the Church should be denied. First, the allowed blended rate of $385.03/hour is somewhat high for this case. While Petitioner's lawyers did good work, the case was not complicated factually nor did the case present novel legal issues." CP at 588. Though brief in its explanation, it is clear that the superior court considered the multiplier. It was not a summary denial as argued by the Church. The superior court contemplated that the allowed lodestar rate was already high based on the nature of the case; therefore, a multiplier was not appropriate. A reviewing court only overturns fee awards, including the application of multipliers, for manifest abuse. *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir.

23

1985). Because there was an hourly fee agreement and the superior court articulated the reason for its decision, the superior court did not abuse its discretion in denying the request for a multiplier.

     5.     Remedy

The Church requests that this court independently review the record and make its own findings as to the Church's fee award. The Church cites to *Lobdell v. Sugar 'N Spice, Inc.*, 33 Wn. App. 881, 658 P.2d 1267, *review denied*, 99 Wn.2d 1016 (1983), and *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 829 P.2d 1099 (1992), in support of its claim that appellate courts may conduct such an independent review.

The issue in *Lobdell* was whether a statute applied to a particular factual situation, and a circumstance where the trial court's finding failed to support its conclusion. 33 Wn. App. at 892-93. In *Bryant*, the trial court had failed to enter any finding on the issue on appeal, and the Supreme Court stated, "[T]he appellate court could not exercise any degree of deference to a trial court's finding, *as no such finding even existed.* *In such situations*, instead of remanding a matter to the trial court for a factual finding, an appellate court may independently review evidence consisting of written documents and make the required findings." 119 Wn.2d at 222 (emphasis added). Neither circumstance applies here because the superior court entered findings and conclusions. Therefore, as a reviewing court, we decline the Church's request to independently determine the amount of attorney fees. *See Chuong Van Pham*, 159 Wn.2d at 540 ("The issue before us is not whether we would have awarded a different amount, but whether the trial court abused its discretion.").

24

C.     THE CITY'S APPEAL

The City appeals the superior court's determination of hours reasonably spent.  The City claims the superior court failed to provide sufficient explanation of its determination and claims the Church failed to prove the compensability of the hours it seeks.  Within its appeal, the City challenges the superior court's FOF 18-20 and COL 5, and it argues that remand is required on the matter of hours spent.  Because the superior court did not abuse its discretion when it determined the hours reasonably expended, the superior court did not err in either its entry of FOF 18-20 or COL 5.

1.      Finding of Fact 18

FOF 18 states, "The Church's request of 1,104.6 hours is exclusive of hours and expenses for claims associated with the Public Records Act."  CP at 588.  The City argues that FOF 18 is not adequately supported by the record and that neither the superior court nor this court can "distinguish the tasks completed by the Church's counsel that related to the LUPA/64.40 RCW cause of action from the tasks completed by the Church's counsel related to the PRA cause of action or the Church's various unsuccessful causes of action and claims."  Br. of Resp't at 4-5.  The City further asserts that the Church has not met its burden of proving its fees, and accordingly, the superior court erred in its finding.

Here, with Sanders' declaration in support of the Church's attorney fee request, the Church submitted an itemized invoice of services rendered over the course of the litigation.  Sanders declared that the invoice had been edited to "reflect services rendered" and the "[removed] costs associated with the PRA claim . . . are highlighted in yellow."  CP at 190.  The invoice contains numerous highlighted items.  It is true that in some of the line items, Goodstein's description of its

attorney work is relatively general. However, in many others, work on the PRA claim is distinguished by descriptors such as, "Research on brief explanation requirement of PRA" and "Finalized PRA summary judgment, declaration, order and attachments." CP at 228. Such descriptions generally allow a reviewing court to identify the PRA-related work. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("We recognize that there is no certain method of determining when claims are 'related' or 'unrelated.' Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Accordingly, substantial evidence supports FOF 18 insofar as it is possible to distinguish between the time Goodstein spent on the PRA claim and the time spent on the LUPA/chapter 64.40 RCW claim sufficiently to determine that the 1,104.6 hours is exclusive of hours and expenses for claims associated with the Public Records Act. Therefore, the superior court did not err in its entry of FOF 18.

2.     Finding of Fact 19

The City challenges FOF 19 in part. The City argues the superior court erred because "[i]t is unclear from the record below which of the 1,104.6 hours claimed by the Church were among the 658.5 hours deemed reasonably expended by the trial court." Br. of Resp't at 5.

The City asserts the superior court "did not offer any substantive articulation of its analysis regarding which of the Church's claimed hours and tasks were actually included in this lodestar award." Br. of Resp't at 1. The City appears to suggest that the superior court should go line by line through over 40 pages of invoice, in which attorneys billed in six-minute increments, to allocate the reasonable hours spent over several years of litigation. However, the superior court

"need not attempt to portray the discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations" so long as there is insight into its exercise of discretion. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990); *accord Taliesen Corp.*, 135 Wn. App. at 143 ("But the findings needed for meaningful review do not ordinarily require such details as an explicit hour-by-hour analysis of each lawyer's time sheets.").

The superior court's determination of hours reasonably expended and the reasons for its determination are discussed above. For the reasons listed in the above, the superior court did not abuse its discretion when it determined that 658.5 hours of the 1,104.6 hours were reasonably expended. Accordingly, the superior court did not err in its entry of FOF 19.

3.     Finding of Fact 20

The City also challenges FOF 20, arguing that the superior court erred "when it awarded the Church any portion of the hours allegedly spent at the various phases of this litigation" because the "Church did not meet its burden in establishing the compensability of these hours claimed and the trial court did not provide sufficient explanation of its analysis and justification of the hours awarded." Br. of Resp't at 6. The City does not argue that FOF 20 is not supported by substantial evidence. The issues raised by the City are addressed above. For the reasons stated above, the superior court did not err in its entry of FOF 20.

4.     Conclusion of Law 5

COL 5 states, "Judgment for reasonable attorney fees in the amount of $253,543.66 should be entered against the City of Tacoma." CP at 589. The City argues that the "analysis behind the number of hours that factored into this lodestar award is not sufficiently documented in the record."

No. 55737-1-II

Br. of Resp't at 7. Again, as discussed in the above, while additional detail may have been desired, the record is clear that the superior court exercised discretion and provided reasons for its decision in FOF 3-4 and FOF 16-19. Therefore, the superior court did not abuse its discretion.

## ATTORNEY FEES ON APPEAL

Both the Church and the City request attorney fees on appeal pursuant to RAP 18.1 and RCW 64.40.020(2).

RAP 18.1 provides a party the "right to recover reasonable attorney fees or expenses on review" before this court, so long as the party requests the fees and "applicable law" grants the right to recover. RAP 18.1(a). RCW 64.40.020(2) provides, "The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees."

As discussed above, neither party prevailed. Therefore, we do not award attorney fees to either party on this appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Cruser, A.C.J.

_____
Price, J.

28